No. 27,771.

THE STATE OF KANSAS, *Appellee,* v. SAM SMITH, *Appellant.*

(271 Pac. 289.)

Opinion filed November 3, 1928.

*R. C. Russell,* of Great Bend, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *Wayne H. Lamoreaux,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appellant in this case was convicted on two counts of being a persistent violator of the prohibitory liquor

law. The errors relied upon in his appeal are the overruling of his motions in arrest of judgment and for a new trial.

The points set up in the motion in arrest of judgment are not pressed in the brief of the appellant, and we learn from the brief of the appellee, although not shown in the abstract, that appellant waived a preliminary hearing before a justice of the peace and gave bond for his appearance in the district court, which would entirely dispose of these questions. But we have disregarded this statement and have considered both points raised in that motion, and we find no error in the overruling of the motion, and a further discussion of those questions would serve no good purpose here.

The motion for new trial and supplemental motion for new trial are upon the ground of newly discovered evidence and misconduct of the jury. The defendant was convicted largely upon the testimony of two confessed confederates, Patton and Brown, who had later pleaded guilty to the violation of the prohibitory liquor law in connection with the same transaction in which the defendant was accused and convicted, and they were at the time they testified in this case serving their sentences in the jail of Barton county.

The defense was an alibi, both for the defendant and for the car in which it was said the transportation of the liquor was made. Part of the newly discovered evidence was that of three parties who had met these two witnesses early Saturday evening, who said these two witnesses were then drinking liquor and offering to sell liquor to others, whereas the two witnesses for the state said they did not have any liquor that evening nor obtain the liquor in question until after midnight. It is argued the newly discovered evidence is neither cumulative nor impeaching, and therefore is such newly discovered evidence as will justify and require the granting of a new trial. But our attention is directed to the testimony of Melvin E. Bowser, who was called as a witness for the defendant at the time of the trial, and testified he saw these two witnesses on that Saturday evening between nine and ten o'clock, that they had been drinking liquor, that he smelled it on their breath, and that they at that time offered to sell liquor to him. This testimony is along identically the same lines as that of the three witnesses now furnishing the newly discovered evidence, except that one of the three witnesses says he went with them part way to where they said they had liquor hid, and they gave him a drink of liquor after procuring it near by. They told him

they had found it in a field near a windmill in a five-gallon container, and that they had brought it to the edge of town with them in the evening. This last part about both of them bringing it to town with them in the evening is not in harmony with any theory of the case and was entitled to very little, if any, credence. The giving of a drink to this witness is along the same line as drinking it themselves and offering to sell it to others—it tended to show possession.

The entire testimony of these three witnesses on the theory of the defense is, we think, both cumulative of that given by the witness Bowser and impeaching the testimony of two witnesses of the state, and was, therefore, not sufficient to require the trial court to grant, or to justify it in granting, a new trial.

"Ordinarily a new trial is not allowed on the ground of newly discovered evidence when such evidence seems to be competent only for the purpose of impeaching witnesses of the opposite party, or, when it is merely cumulative." (*State v. Stach*, 116 Kan. 187, syl. ¶ 3, 226 Pac. 238. See, also, *State v. Fleeman*, 102 Kan. 670, 171 Pac. 618; *State v. Smith*, 114 Kan. 186, 217 Pac. 307.)

Another line of newly discovered evidence is that given by the two witnesses for the state by affidavit after they had been released from jail and had left Barton county, in which affidavits each separately recanted his testimony given at the trial and entirely absolved the defendant from any connection whatever with the transaction, thereby admitting that the testimony originally given by them at the trial was absolutely false. The testimony of any witness who recants his sworn statements is not worthy of very much credence—either the original testimony or the recanting testimony. The trial courts, therefore, when confronted with such false swearing at one time or the other, are required to take into consideration all the facts and circumstances in the case upon which reliance can be placed, observing the reasonableness of the several statements.

The trial court may well have doubted the truthfulness of these affidavits because of their unreasonableness and their failure to state things necessarily incident to the circumstances therein related—for instance, what Morris, the farmer who brought the witness Patton and the liquor from his farm in his car, did and said in connection therewith. Men do not usually transport liquor and bootleggers in their own cars and then drop entirely out of the transaction. Morris is charged with such transportation as freely and

completely by Patton as he had previously charged the defendant. Patton further says Morris helped to hide it two miles from town. To credit this the trial court would have to conclude, among other things, that as far as Patton was concerned there was no honor among bootleggers, for Patton took into the deal a new comrade, Brown, and apparently eliminated Morris. Again, both say they drove out to the place, two miles out of town, to get it, and, Brown says, in a car that Patton had. Why avoid a specific description of the car? Patton excuses himself for the giving of the original testimony charging Smith, the defendant, instead of Morris, on the ground of his being kept in the jail forty-eight hours without food.

These, and possibly many other statements of these recanting witnesses, viewed in the light of all the facts and circumstances by the trial court, as well as the appearance and conduct of these two witnesses who changed their testimony, could fairly and reasonably have convinced the trial court that credit should not be given to these two affidavits. Recanting affidavits are generally looked upon with more or less suspicion. Usually, if made to satisfy the compunctions of conscience, the relenting and remorseful falsifier consistently acknowledges his defenseless guilt and honorably submits himself to the just punishment which a merciful court may impose. The facts and circumstances disclose sufficient in this case to fully justify the trial court in concluding that the recanting testimony was not worthy of credit, and in refusing a new trial.

"The recantation of his testimony, by a witness for the prosecution in a criminal case, does not necessarily entitle defendant to a new trial. . . .

"When a witness for the prosecution recants his testimony, and a consideration of all the facts and circumstances of the case lead to the conclusion that the recantation is false, the new trial should be refused." (*State v. Buton,* 124 Kan. 509, syl. ¶¶ 1, 2, 260 Pac. 634.)

"When a witness for the prosecution in a criminal case recants his testimony in an affidavit used by defendant on a motion for a new trial, the court should look on such recanting affidavit with suspicion. It is only in extraordinary and unusual cases that the court should grant a new trial because of such recanting affidavit." (*State v. Birzer,* 126 Kan. 414, syl. ¶ 2, 268 Pac. 842.)

The last ground urged for a new trial is the misconduct of the jury. The affidavits of the defendant, his wife, and two others show that they were seated thirty or more feet from the jury room down the hall of the court house and heard the jurors discuss the case, referring to the defendant with improper epithets as "damn nigger"

and other similar expressions, which it is claimed showed prejudice sufficient to justify the granting of a new trial. Both sides refer to the fact that ordinarily it would be impossible to hear even loud talking in that room at the place where these witnesses were seated, and appellee calls our attention to the fact that no complaint was made by the defendant or his counsel as to this conduct prior to or at the time of the rendition of the verdict.

No one will attempt to justify the jury or any of the jurors in the use of such epithets and unbecoming appellations, nor in commenting on the connection of the defendant with the case in any other way or manner than that shown by the testimony; but the rule is that such improper statements are not sufficient to authorize the granting of a new trial unless it appears that prejudice resulted therefrom or that they raise a presumption of prejudice. Without condoning or excusing in the least the use of any such language, we can see how the trial court would be at a loss to determine that there was actual prejudice on the part of the jury toward the defendant or that the facts raised a presumption of such prejudice, and therefore the trial court committed no error in refusing a new trial.

"It is not error to deny a motion for a new trial in a criminal case for misconduct of the jury, unless the facts are such that the court may presume that prejudice resulted therefrom to the defendant." (*State v. Stevenson,* 74 Kan 193, syl. ¶ 1, 85 Pac. 797. See, also, *State v. Gould,* 40 Kan. 258, 19 Pac. 739.)

The judgment is affirmed.