NOT DESIGNATED FOR PUBLICATION

No. 114,131

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER BROADNAX,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed December 16, 2016. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., LEBEN and GARDNER, JJ.

*Per Curiam*: Christopher Broadnax appeals his jury conviction for rape raising four issues: (1) The unredacted video deposition of the examining nurse was admitted in error; (2) there was prosecutorial error; (3) he suffered ineffective assistance of trial counsel; and (4) the district court should have granted him a new trial based on newly discovered evidence. Our examination of the record reveals no error by the district court, and we affirm.

1

K.J. heard a knock at her door between 12 a.m and 1 a.m. on September 9, 2012. Broadnax was at the door asking for "Jazmon." K.J. responded she was not Jazmon. As she opened the door, Broadnax came inside the house. Broadnax had been at K.J.'s house earlier that night with Jazmon Lawson for about 5 minutes during a dinner party K.J. was hosting. She testified that upon entering the house, Broadnax "started rushing to have sex." K.J. ran upstairs and Broadnax followed. K.J. stated Broadnax was calling her Jaz and said he knew she wanted to have sex. K.J. told him several times she did not want to have sex; however, he proceeded to take her clothes off. K.J. testified he then raped her on the living room couch. She eventually pushed Broadnax off of her and escaped to her bedroom. At that point, Broadnax ran out the back of her house.

K.J. called her neighbor and then called the police. K.J. gave statements to the responding officers and was taken to the University of Kansas Medical Center for a sexual assault exam. The sexual assault exam was conducted by Nurse Shelly Blann who performed a pelvic exam on K.J., took hair samples from her scalp and pubic area, and took vaginal, anal, and breast swabs. After the exam, Detective Stuart Littlefield interviewed K.J. and Jazmon. Jazmon thought Broadnax matched K.J.'s description of the perpetrator. Detective Littlefield brought Broadnax in for questioning. Initially, Broadnax denied everything but later admitted he had sex with K.J., and gave Littlefield a summary of the events.

Police collected white lace panties, two knives, a pair of plaid shorts, a green washcloth, and a couch cushion that was stained. These items, along with the sexual assault kit and oral swabs from Broadnax, were submitted for testing. Shannon Brink of the Kansas Bureau of Investigation (KBI) testified there was seminal fluid on the panties and vaginal slides, and there was saliva and blood on the shorts. There was no seminal fluid on the washcloth; however, it was not screened for blood or saliva. Jennifer Solado,

also with the KBI, conducted additional DNA testing. She testified the swab from K.J.'s right breast was consistent with a mix of DNA from three individuals but K.J. was the only one whose DNA could be matched due to the quality of the sample. The DNA on the vaginal swab, shorts, and panties was consistent with K.J. and Broadnax.

Prior to trial, Broadnax's counsel sought to redact portions of the video deposition testimony of Blann. Specifically, he sought to exclude the testimony describing the nature of the sexual assault exam, and exclude any testimony regarding the treatment or medications given to K.J. after the exam. Additionally, he sought to exclude testimony by Blann that a Metropolitan Organization to Counter Sexual Assault (MOCSA) advocate was present during the exam and testimony about what a MOCSA advocate is.

The district court found that, given the defense of consent in this case, testimony regarding the sexual assault exam was relevant to K.J.'s credibility. The district court did not believe the testimony about the exam would be overly prejudicial and found it was admissible. Further, it held testimony regarding the MOCSA advocate was not overly prejudicial; rather, such evidence was "just protocol." The record also reflects that during the deposition of Blann, defense counsel expanded the inquiry about the MOCSA representative.

Broadnax chose to testify and asserted he had consensual sex with K.J. He testified he was at K.J.'s the evening before when she was having a dinner party. During the party, Broadnax thought K.J. was flirting with him, and because he was in the area later that night, he thought he would stop by. Broadnax testified K.J. let him in and they had a short conversation before having sex. He stated they went to her couch where he performed oral sex on her, then they had vaginal intercourse. He testified he followed her afterward and asked K.J., "What's up with you? What's going on?" She responded that he had to go, but said it was alright if he used her bathroom. Broadnax washed up in her

3

bathroom. K.J. reiterated he had to go because her boyfriend was on his way over. Broadnax left out the back door.

Broadnax was charged with one count of rape pursuant to K.S.A. 2015 Supp. 21-5807(b) and one count of aggravated burglary pursuant to K.S.A. 2015 Supp. 21-5503(a)(1). The jury convicted Broadnax of rape but acquitted him of the aggravated burglary charge. After the verdict, Broadnax moved for new counsel. His counsel was allowed to withdraw and new counsel was appointed. Broadnax filed a motion for new trial alleging trial counsel was ineffective. He also asserted newly discovered evidence entitled him to a new trial. An evidentiary hearing was scheduled to hear both motions.

At the hearing challenging counsel's competence, trial counsel testified he did a good job of trying to impeach K.J., but Broadnax believed impeachment meant to disqualify a witness. Further, counsel stated he did not request DNA testing of the green washcloth from the bathroom because any testing would have further delayed the trial, and he discussed the matter with Broadnax who decided they should move to trial. Broadnax testified he had newly discovered evidence that required the district court to grant him a new trial. He stated A.L., a friend of K.J.'s, had told him a week or two prior to the hearing that after trial, K.J. told her she had made up the allegations against Broadnax. Broadnax subpoenaed A.L. to testify but she did not appear, so he proffered her expected testimony.

The district court denied both of Broadnax's motions for a new trial. It found trial counsel was not ineffective and had done an excellent job given the circumstances. The district court also found that even if there were deficiencies, they would not have mattered at trial. Further, the district court found A.L.'s statements were hearsay and were not credible given the timing and nature of the allegations. Broadnax timely appeals.

ANALYSIS

*Admission of the Unredacted Video Deposition*

An appellate court must apply the statutory law on evidence as it was at the time of the challenged evidentiary ruling. *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). Multiple inquiries are involved when the admission or exclusion of evidence is challenged on appeal.

"Appellate review of a trial court's decision to admit evidence is a two-step process. First, the appellate court determines whether the evidence is relevant. *State v. Phillips*, 295 Kan. 929, 947, 287 P.3d 245 (2012). Evidence is relevant if it has a 'tendency in reason to prove any material fact.' K.S.A. 60-401(b). 'Relevance is established by a material or logical connection between the asserted facts and the inference or result they are intended to establish.' *Phillips*, 295 Kan. 929, Syl. ¶ 7. Relevant evidence is both: (1) material, *i.e.* the fact has a legitimate and effective bearing on the decision of the case and is in dispute; and (2) probative, *i.e.* has '"any tendency in reason to prove"' the fact. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013). Materiality is reviewed de novo, while probativity is reviewed for abuse of discretion. 297 Kan. at 622.

"If the evidence is relevant, the court next applies the statutory provisions governing admission and exclusion of evidence. *Phillips*, 295 Kan. at 947. 'These rules are applied either as a matter of law or in the exercise of the district court's discretion, depending on the rule in question.' *State v. Hughes*, 286 Kan. 1010, 1020, 191 P.3d 268 (2008). Whether the probative value of otherwise relevant evidence outweighs its potential for undue prejudice is reviewed for abuse of discretion. See *Phillips*, 295 Kan. at 947; *State v. Wilson*, 295 Kan. 605, 621, 289 P.3d 1082 (2012).

"A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Huddleston*, 298 Kan. 941, 318 P.3d 140 (2014). But '[w]hen the adequacy of the legal basis of a district judge's decision on admission or exclusion of

evidence is questioned, we review the decision de novo.' *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006)." *State v. Bowen*, 299 Kan. 339, 348-49, 323 P.3d 853 (2014).

The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2015 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely objection made on the record and "'so stated as to make clear the specific ground of objection.'" *Bowen*, 299 Kan. at 351. Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012).

Broadnax argues the district court erred in admitting Blann's unredacted video deposition. He acknowledges he did not contemporaneously object to the admission of the video at trial. Here, we do not need to address whether Broadnax's failure to timely object can be considered for the first time on appeal as we find the deposition video was properly admitted.

The deposition was relevant evidence for the jury to consider in the totality of the circumstances of what took place in the early morning hours of September 9, 2012. The evidence was more probative than prejudicial as it allowed the jury to hear how some of the evidence was collected. The district court properly weighed the admission of the evidence during the motion in limine, and we observe no abuse of discretion. The lack of a timely objection during the trial makes no difference to our decision as it would have been overruled and denied.

6

*No Prosecutorial Error*

Appellate review of an allegation of prosecutorial error was modified in *State v. Sherman*, 305 Kan. ___, 378 P.3d 1060 (2016). Under the modified standard, the appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v.* Ward, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." *Sherman*, 378 P.3d at 1075.

Prior cases considering factors such as whether the misconduct was gross and flagrant or whether the misconduct showed ill will on the prosecutor's part were overruled by *Sherman*, 378 P.3d at 1065-66, 1074. Broadnax briefed the issue of prosecutor error under the prior standard of prosecutorial misconduct as discussed in *State v. Bennington*, 293 Kan. 503, 530, 264 P.3d 440 (2011). We find Broadnax is not entitled to relief under either standard.

Broadnax argues the State committed error based on the prosecutor's comments in closing argument. He argues the prosecutor's reference to him having scratches on his arm was unsupported by the record. However, on cross-examination, Broadnax admitted he had scratches on him when he spoke to Detective Littlefield after the incident. He argues that by mentioning this fact in closing argument, the State was attempting to imply some kind of struggle took place; however, he does not fully explain the point. The record shows this fact was mentioned only once in closing argument. The prosecutor did not elaborate on the fact or claim it was evidence of a struggle; rather, she mentioned it as evidence observed at the time Broadnax was interviewed. We observe no prosecutorial error.

Next, Broadnax argues the prosecutor improperly asserted K.J. had been consistent in her statements. Broadnax argues K.J. was not consistent and points to several discrepancies in her testimony:

"K.J. had told Blann that after Broadnax left, she locked all her doors. However, [her neighbor] stated that shortly after the incident he received a call from K.J. and met her at her front door. He then went out the back door and came back in, despite the doors all be[ing] locked. Additionally, K.J. had previously testified at the preliminary hearing that Broadnax went up the stairs first, but at trial testified she ran up the stairs and he chased her.

"K.J. also told Blann that after the incident, she called her boyfriend Chris, who came over. Only then did she call 911. However, she testified at the preliminary hearing that Chris did not come over on the night in question. Further, she testified that her call to 911 was made at the same time Broadnax was going out the back. At the preliminary hearing, however, she testified that Broadnax was still standing by her patio and she told him he needed to leave. Rather than being consistent, K.J.['s] statements varied on several key aspects relating to how the events played out, the timing of the phone call to her neighbor and 911. Given this evidence, the State's assertion that K.J. was consistent was a misstatement of the facts."

Here, Broadnax exaggerates what the prosecutor said and fails to acknowledge the prosecutor told the jury there had been minor differences in K.J.'s account of the rape. The prosecutor admitted K.J. "couldn't give [the jury] a play-by-play account of what happened." The prosecutor went on to say:

"I submit to you that if I asked you actually what time each witness started in this case and exactly which order I called them in you probably couldn't tell me exactly either. That wouldn't mean you're being deceitful; it would just mean you're human beings. You don't remember exactly the sequence, but you know what you heard. And she knows, and she's confident she did not agree to have sex with this man. And that's her clearest memory is being upset and scared."

Essentially, the prosecutor acknowledged the same discrepancies Broadnax now cites to on appeal. The prosecutor did not misstate the evidence in closing argument, and Broadnax has failed to show any error by the State on either point raised. Accordingly, there can be no prejudice. See *Sherman*, 378 P.3d at 1075. We find no prosecutorial error.

*Ineffective Assistance of Counsel Claim*

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether the district court's findings are supported by substantial competent evidence and determine whether the factual findings support the district court's legal conclusions; the appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury

9

would have reached a different result absent the deficient performance." *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

> "The Sixth Amendment [to the United States Constitution] right to counsel is the right to effective assistance of counsel. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Rice*, 261 Kan. 567, Syl. ¶ 12, 932 P.2d 981 (1997).

> "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the effectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rice*, 261 Kan. 567, Syl. ¶ 14.

As a general rule, an appellate court will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014).

> "[G]enerally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986)." *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012).

10

An appellate court considers a claim of ineffective assistance of counsel for the first time on appeal only when "there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record." *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2010).

Broadnax argues his trial counsel was ineffective for failing to obtain evidence that would bolster his credibility. Broadnax also argues trial counsel undermined his credibility during questioning of both himself and K.J. He acknowledges that his claim of ineffective assistance of counsel is one that ordinarily cannot be raised for the first time on appeal; however, he cites pertinent authority explaining why his claim can and should be considered in light of the proceedings at the district court. Based on the findings of the district court, Broadnax's claim of ineffective assistance of counsel can be considered on direct appeal. See *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000) (court can consider ineffective assistance of counsel claim for first time on appeal where appellate record is sufficient to decide issue in context of direct appeal).

Broadnax testified that after he had sex with K.J., he washed up in her bathroom before leaving. He stated he used a green towel to dry off. In contrast, K.J. testified Broadnax ran out of her house as soon as she was able to get away from him. Broadnax asserts DNA testing of the towel would have backed up his testimony and refuted K.J.'s. Since the record reflects Broadnax agreed with his attorney in preparing for trial not to do DNA testing on the green washcloth, we find no support for Broadnax's argument on this point.

Broadnax next asserts:

"In questioning Broadnax, [trial counsel] asked Broadnax if he originally went to K.J.'s party to possibly get together with her. He also asked why the following night Broadnax just showed up at K.J.'s late in the night. Broadnax testified that he felt she might 'just be

11

interested in hooking up.' In closing, [counsel] stated the jury probably heard 'about a lifestyle that you wouldn't personally involve yourself with and maybe you don't understand.' He also said a '22-year-old kid thinks he's going to hook up with a girl, goes to pop in on her, flirts a little while, they have sex. That may not be how you live, but that doesn't mean you can convict.' As noted by Broadnax in his motion, this had the effect of portraying him in a negative light."

He argues counsel's questioning and comments in closing argument undercut his credibility. He asserts they "painted [him] in a bad light in front of the jury," and "implied that he was one of little character and had only one thing on his mind." Broadnax contends the comments "pushed the jury to believe he was looking for sex and was not going to take no for an answer."

Again, this court's review of counsel's performance is highly deferential. A fair assessment of his attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-90; *Rice*, 261 Kan. at 601. Here, counsel's closing argument was based on the facts he had to work with as he attempted to explain his client's claim that the sexual relationship was consensual. Counsel's argument is reasonable—the jury may not agree with Broadnax's lifestyle, but that alone is not a reason to convict him. Counsel's questions and argument were not objectively deficient, were legally sound, and could be seen as an appropriate strategy. Broadnax has failed to show counsel's performance was deficient; therefore, there can be no prejudice. See *Sola-Morales*, 300 Kan. at 882.

*Motion for New Trial*

"The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2015 Supp. 22-3501(1). An appellate court reviews the trial court's decision on a motion for new trial for an abuse of discretion. *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015). A judicial action constitutes an abuse of discretion is the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

> "When determining whether a new trial is warranted on the basis of newly discovered evidence, the court considers whether: (1) 'the new evidence could not, with reasonable diligence, have been produced [at] trial,' and (2) 'the evidence is of such materiality that it would be likely to produce a different result upon retrial.' [*State v.*] *Laurel*, 299 Kan. [668,] 676[, 325 P.3d 1154 (2014)].
>
> ". . . In determining whether new evidence is material,
>
> > 'the district judge must assess the credibility of the newly proffered evidence.' See *State v. Cook*, 281 Kan. 961, 993, 135 P.3d 1147 (2006); *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984).
> >
> > . . . .
> >
> > '[The appellate court will] not reassess a district judge's determination of credibility at a motion for new trial hearing. [Citation omitted.]'" *State v. Warren*, 302 Kan. 601, 615-16, 356 P.3d 396 (2015).

> "Where a new trial is sought on the basis of recanted testimony of a prosecution witness, the weight to be given to such testimony is for the trial court to determine. The trial court is required to grant a new trial only when it is satisfied the recantation of the witness' testimony is true and material." *State v. McKinney*, 272 Kan. 331, 338, 33 P.3d 234 (2001), *overruled on other grounds State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 (2006).

See *State v. Fulton*, 292 Kan. 642, 650, 256 P.3d 838 (2011) (applying the abuse of discretion standard).

The district court denied Broadnax's motion for a new trial because it found the newly discovered evidence was hearsay and was not credible given the nature and timing of the allegations. Specifically, the district court stated:

> "Finally touching upon, once again, the allegation regarding [A.L.] who apparently one year after the conviction now is alleging to have had a conversation with the victim, she was subpoenaed. She does not appear in court. This is all hearsay. And the court given the nature and timing of the allegations does not find them credible."

Broadnax argues the district court's finding that the evidence was hearsay is "legally inaccurate." He argues K.J.'s statement to A.L. was an admission to perjury, which should be admitted as a statement against interest under K.S.A. 2015 Supp. 60-460(j). He is correct on this point. However, what he fails to address and consider is the fact this evidence is multiple hearsay. K.J.'s out-of-court statement to A.L. is hearsay and A.L's out-of-court statement to Broadnax is hearsay. Ultimately, for Broadnax to successfully proffer A.L.'s testimony, both statements would need to fit into a hearsay exception. He has not explained what exception, if any, would make A.L.'s statement admissible. Broadnax failed to brief the issue, therefore it is deemed waived and abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (an issue not briefed by the appellant is deemed waived and abandoned).

Broadnax also asserts the district court's credibility determination was "without basis." He argues: "[T]he district court had no basis to find the statements of [A.L.] were not credible. It never heard from [A.L.], who did not appear pursuant to the subpoena issued by Broadnax." What Broadnax again fails to consider is his proffered testimony consists of two statements—K.J.'s statement to A.L. and A.L's statement to Broadnax.

14

The district court was in the best position to consider the credibility of the evidence Broadnax wanted to present to support his motion for a new trial. Such a determination was reasonable and we observe no abuse of discretion by the district court. Broadnax's argument fails.

Affirmed.