NOT DESIGNATED FOR PUBLICATION

No. 120,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRIS LEWIS MAYS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER ORTH MYERS, judge. Opinion filed January 29, 2021. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Maurice Brewer*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

PER CURIAM: Chris Lewis Mays has serious anger issues, at least when dealing with his estranged spouse. Mays and his wife, J.R., were married in June 2015. Early the following year they had an argument that led to Mays putting a gun to J.R.'s head. As a result, she moved out but continued to have a relationship with Mays. In February 2017 their daughter was born.

In March 2017, when Mays went to J.R.'s residence to visit the baby, he found that J.R. was not home. He became angry and returned the following day and broke down the

door to J.R.'s house. J.R. commenced a protection from abuse action and obtained a final protection from abuse order which was served on Mays in November 2017.

During the night of December 12, 2017,  J.R. was at home sleeping with her new boyfriend when bullets were fired through her bedroom window. J.R.'s daughter was asleep in a crib next to the bed. One of the bullets lodged behind J.R.'s headboard. J.R. called the police. J.R.'s mother, who lived next door, had a security camera at her home which recorded the incident and showed that the shooter was in a car that closely resembled Mays' gray Dodge Durango.

 About 30 minutes later J.R. received a text message in Spanish which appeared to have been written using Google Translate. (Mays does not speak Spanish but J.R. apparently does.) J.R. believed the message came from Mays. The English translation of the message was "Next time I'm not going to lose/miss."

The police went to a house owned by Mays' mother where they found a blue Dodge Durango outside. The officers saw shell casings on the rear passenger floorboard of the Durango, so they had the truck impounded for further investigation. Altogether they found eight shell casings on the floorboard of the Durango.

A few days later, on December 16, 2017, Mays returned to J.R.'s home and drove in circles on her front lawn while honking his horn. He returned several hours later in a different car, a black Dodge Charger. He got out of the car and confronted J.R. and her boyfriend on the lawn. During the ensuing argument he brandished a gun before returning to his car and driving off while firing shots into the air. When J.R.'s boyfriend returned fire, Mays turned the car around and drove back down J.R.'s street, firing more shots at J.R.'s home. When the police arrived, they found bullet holes in J.R.'s house and collected several shell casings in the street and sidewalk and bullet fragments inside the house.

J.R. and the rest of the household spent the night at her mother's house next door. In the early morning hours that followed, more shots were fired which struck J.R.'s mother's house and cars parked in the driveway. The police found more shell casings in the street. In a telephone conversation while the police were still investigating this most recent shooting, Mays told J.R. that he was only shooting at her car and that he wanted to see their daughter.

Two days later, on December 19, 2017, Mays called J.R. again and threatened to come back and shoot them.

Ballistic analyses established that the shell casings recovered from the Dodge Durango on December 12 and those found on the street outside J.R.'s house on December 16 and 17 were fired from the same gun.

The State charged Mays with two counts of criminal discharge of a firearm at an occupied building, three counts of stalking, three counts of criminal possession of a weapon, three counts of criminal damage to property, three counts of aggravated endangering a child, aggravated assault, and eluding a police officer.

Prior to trial the State moved under K.S.A. 60-455 for the admission of evidence regarding Mays' prior acts of domestic violence against J.R. in order to prove his motive, intent, identity, and course of conduct. The court granted the State's motion.

At trial Mays was convicted on all charges except the charge of eluding a police officer.

Mays moved for a new trial, claiming his trial counsel had provided ineffective assistance. Following a hearing on the motion the court denied relief and sentenced Mays

3

to prison.

Mays appeals, arguing that (1) the evidence supporting his conviction for the December 12, 2017, shooting was insufficient; (2) the district court erred in admitting K.S.A. 60-455 evidence at trial; and (3) the district court erred in not granting him a new trial based on ineffective assistance of counsel.

*The Sufficiency of the Evidence Regarding the December 12, 2017 Shooting*

In considering this claim we review the record in the light favoring the State, the prevailing party, to determine whether a rational juror could have found Mays guilty beyond a reasonable doubt of the charges related to this shooting. In doing so we do not reweigh evidence, resolve evidentiary conflicts, or redetermine the credibility of the witnesses at trial. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Circumstantial evidence may be sufficient to support a verdict for even the gravest offense so long as "it permits the factfinder to draw a reasonable inference regarding the fact(s) in issue." *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017); *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

Mays argues that the evidence was insufficient to identify him as the shooter on the night of December 12, 2017. He relies on the evidence that no one saw the driver, no license plate could be seen on the security footage, there were different descriptions of the color of the Durango, and the impounded Durango was not registered to him.

In our review we examine the evidence in the light favoring the State. We do not weigh that evidence against the evidence Mays now cites. That was a matter for the jury. See *Chandler*, 307 Kan. at 668.

4

Here, the jury had before it evidence that J.R.'s mother's security camera next door recorded a Dodge Durango driving past at the time the shooting occurred. The vehicle closely resembled Mays' car. At the house owned by Mays' mother the police found a Dodge Durango which had shell casings on the floorboard which matched the casings left at the scene of Mays' later drive-by shootings. Finally, soon after the initial shooting J.R. received a threatening text which she attributed to Mays. The message clearly implied that Mays had been the shooter and threatened that another shooting was to follow. This circumstantial evidence supports Mays' conviction for the crimes arising from the December 12, 2017, shooting. From this evidence the jury could reasonably infer that Mays was the shooter. There was substantial competent evidence from which the jury could conclude that Mays was the shooter on the night of December 12, 2017.

*The Admission of K.S.A. 60-455 Evidence at Trial*

Mays contends the district court erred in admitting evidence concerning his history of domestic violence against J.R. He does not claim this evidence was irrelevant. Rather, his only claim is that its prejudicial effect outweighed its probative value.

In considering this claim we apply the abuse of discretion standard. K.S.A. 60-445; *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013); see *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014). Judicial action constitutes an abuse of discretion if no reasonable person would take the view adopted by the trial court, or if the trial court's action is based on an error of fact or law. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Mays does not assert any claim that the district court committed an error of fact or law in admitting this evidence. So the issue turns on whether no reasonable judge would have admitted this evidence at trial under the circumstances presented.

In cases like this, evidence of prior bad acts is "inadmissible to prove such person's disposition to commit crime or civil wrong." K.S.A. 2019 Supp. 60-455(a). But this type

5

of evidence "'is admissible when relevant to prove . . . motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' K.S.A. 2019 Supp. 60-455(b)." *State v. Gray*, 311 Kan. 164, 171, 459 P.3d 165 (2020). Here, the district court admitted the evidence of Mays' prior bad acts to show motive, identity, and the course of conduct between him and J.R. Mays does not contend that the evidence of his prior bad acts was irrelevant as not tending to prove motive, identity, and the course of conduct between him and J.R.

The K.S.A. 60-455 evidence admitted through J.R.'s testimony consisted of the following:

- While they were married, Mays pointed a gun at J.R.'s her head during an argument;
- Mays broke into her home when she left him after the birth of their daughter and on another occasion broke down her front door;
- Mays had previously threatened to kill her;
- Mays had rammed a truck at her mother's house when he believed she was seeing another man;
- Mays antagonized her at work while she was talking to a male co-worker and shot a gun in the air during the confrontation;
- Mays violated the protection from abuse order and beat her and chased her down her street when he found out that she had been texting another man.

The district court instructed the jury that this evidence could "be considered solely as evidence of [Mays'] motive, identity, and relationship of continuing course of conduct between [him and J.R.]." We presume that the jurors followed this limiting instruction. See *Gray*, 311 Kan. at 172; *State v. Seba*, 305 Kan. 185, 204, 380 P.3d 209 (2016) (citing supporting cases). Mays presents no evidence with which to challenge this presumption.

6

Thus, the jury did not use this evidence to conclude that because Mays was a bad actor before, he must have committed the crimes of which he now stands accused.

The K.S.A. 60-455 evidence was certainly prejudicial. That was the whole point of the State offering it, along with all the other evidence the State offered at trial. The issue is whether its prejudicial effect outweighed its probative value. Mays fails to convince us that it did and that no reasonable judge would have admitted this evidence at trial. Accordingly, we conclude that the district court did not abuse its discretion in admitting this evidence.

*Ineffective Assistance of Trial Counsel*

Mays contends the district court erred in denying his motion for new trial based on ineffective assistance of counsel. He argues that his trial counsel, David Patrzykont, was ineffective in (1) failing to spend sufficient time preparing for trial, (2) failing to provide him a copy of the transcript of the preliminary hearing, and (3) failing to subpoena witnesses in order to present an alibi defense. Mays and Patrzykont were the only witnesses called to testify at the hearing on Mays' motion.

We review the district court's decision denying relief on Mays' motion for a new trial for abuse of the court's discretion. See *State v. Fulton*, 292 Kan. 642, 648, 256 P.3d 838 (2011). We refer the reader to the section above for a description of what constitutes an abuse of discretion.

Mays' burden in pursuing this claim is twofold. First, he must establish that his counsel's performance was constitutionally deficient—that is, that counsel's performance was less than that guaranteed by the Sixth Amendment to the United States Constitution. Second, he must establish that his counsel's deficient performance prejudiced him by depriving him of a fair trial, i.e., that there is a reasonable probability the jury would have

7

reached a different result absent his counsel's deficient performance. See *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential to counsel's decisions and actions and requires the court to consider the totality of the evidence. In our review we presume that counsel's conduct fell within the broad range of reasonable professional judgment. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Mays' first claim is that his trial counsel, David Patrzykont, failed to spend enough time preparing the case for trial. At the hearing on Mays' motion, Patrzykont testified—and jail records confirmed—that he met with Mays on three occasions. He testified that on each visit he discussed with Mays potential defenses, potential witnesses, and the evidence against Mays. He reviewed with Mays all the discovery in the case, investigated all the potentially exculpatory evidence Mays informed him of, and filed several pretrial motions.

Mays makes note of the fact that this was only Patrzykont's third jury trial. We examine a lawyer's performance not by how long the lawyer has been trying cases, but how the lawyer performs in preparing and trying the case. There is no presumption of a failure to provide effective assistance in favor of a client who is represented by a young lawyer. The clients of a young lawyer trying his or her first few cases do not get an automatic new-trial mulligan following their convictions.

Next, Mays claims that Patrzykont did not provide him with a transcript of the preliminary hearing. But Patrzykont testified at the hearing that when he visited with Mays in order to prepare his defense he reviewed the transcript of the preliminary hearing with Mays. Obviously, the district court believed Patrzykont rather than Mays. We do not substitute our view over that of the district court on matters of credibility such as here.

For his third claim, Mays asserts that Patrzykont failed to subpoena witnesses in order to present an alibi defense. Mays testified at the hearing that he provided names and phone numbers of his mother and sister who would provide him an alibi for the nights of each shooting, and that Patrzykont promised to investigate the potential for presenting an alibi defense. But Patrzykont testified that Mays never informed him of any potential alibi, nor did Mays provide him with any witnesses to contact about it. But he did communicate with Mays' sister and mother to investigate any possible defenses. While Mays' sister had no information about an alibi, she provided a text message that suggested that Mays' was lured to J.R.'s house. But Patrzykont determined that testimony about this text would be inconsistent with Mays' planned defense: that he was never present at J.R.'s house during the shootings. Under the circumstances, his decision not to present that evidence at trial was a reasonable and informed strategic decision. See *State v. Cheatham*, 296 Kan 417, 437, 292 P.3d 318 (2013); *Rowland v. State*, 289 Kan. 1076, 1083-84, 219 P.3d 1212 (2009).

Finally, Mays fails to show any reasonable probability that, but for Patrzykont's claimed deficient performance, the outcome of his trial would have been different. Mays faced overwhelming evidence at trial. There was strong circumstantial evidence to support Mays' convictions for the crimes arising from the December 12, 2017, shooting and Mays does not contest his convictions arising from the other two shootings. Even if Patrzykont had called Mays' sister or mother to testify, there is no evidence—aside from Mays' own assertions—that any witness would have come forth with testimony that he could not have committed these shootings.

We conclude that the district court did not abuse its discretion in denying Mays' motion for a new trial based on his contention that Patrzykont provided ineffective assistance in representing him.

9

Affirmed.